Yes, Your Honor. Case number 20-2415, Teresa Padilla-Franco, et al. v. Merrick B. Garland. Good afternoon. May it please the Court and Co-Counsel, Opposing Counsel. My name is Matthew Hoppeck. I represent petitioners Teresa Padilla-Franco and her two daughters. This is an immigration appeal that challenges a decision by the Board of Immigration Appeals that leaves us all wondering what parts of the underlying decision issued by the immigration judge the Board intended to agree with. I start with that issue because I think it's dispositive and because it undercuts most of the Attorney General's arguments in their opening brief. The real question here is whether the Court is reviewing the BIA's decision or both the BIA's decision and the immigration judge's decision. The answer to that matters because in answering back each of Ms. Padilla-Franco's arguments, the Attorney General defends the BIA's decision by saying the things that it missed don't necessarily matter because the judge had also covered those issues and that the Board explicitly adopted the judge's decision. In fact, at page 24 of their brief, the Attorney General argues, quote, that the Board explicitly affirmed the immigration judge's entire decision. If that were true, if the Board had adopted the judge's decision, then this Court would be reviewing both the BIA's decision and the immigration judge's decision and things that the Board had left out, you could look back to the IJ's decision and say, well, the Board adopted those findings, so it's as if the Board made them on its own. Counsel, I want to ask a question on that. Judge Kobus here. On page four of the addendum, the BIA indicates for the foregoing reasons and those articulated by the immigration judge in his decision. Under the law case, doesn't that indicate that the BIA adopted the IJ's opinion? I don't think so. It's a head scratcher, but I'll tell you why I don't think so. First, the Board told us they weren't adopting all of the judge's decision. Well, first, if you scan the decision, you won't find the word adopt. But looking to footnote two at page three, the Board explicitly said it was not adopting part of the judge's finding on nexus. It said it didn't have to reach that issue because it had disposed of another issue. If the Board intended to adopt all of the IJ's findings, as the Attorney General argues, as the Attorney General wants to, I think, stretch that final sentence to mean, then footnote two doesn't make any sense. Could footnote two be an exception? Is that something that the BIA could do? Sort of summarily say for the reasons articulated by the IJ, but then this footnote is sort of a carve-out of something we don't have to say whether or not we agree. Perhaps, but I think we're all left guessing. And the answer, I think, goes back to how this court has worded the rule. Repeatedly, this court has said, in deciding whether we're reviewing the judge's decision, we have to see whether the Board expressly adopted, that's the phrase this court has used, expressly adopted the IJ's decision. If we're guessing whether that's a carve-out, I would say that the court said in the Gutierrez-Vidal case, that because the Board hadn't expressly adopted the IJ's finding, it wasn't, quote, properly before the court. The same was true in the Uzo-Dinma case the court issued last year, where the court said only to the extent the BIA adopted the judge's findings are they before the court at all. The same was true in the Fofane case, I think, from several years ago, where the court said that only the IJ's findings that the BIA, quote, expressly adopted. I think this court has set a standard that the agency needs to be clear, and this case falls far short of the standard. Moving beyond footnote two, I think we have another signal in the Attorney General's brief. At page 36, footnote five, the only argument the Attorney General makes on the issue of nexus, the Attorney General says if the court agrees with petitioner on past and future persecution, it ought to remand this case back to the BIA, quote, because the Board did not address the cognizability of the remaining two particular social groups. Here, I think the Attorney General is telling us the Board did not intend to adopt all of the immigration judge's decision. If it had, this footnote wouldn't make any sense. Is there anything in the regulations that would prohibit this kind of, I guess we're kind of calling it a carve out, sort of a blanket adoption with some exception? Is there anything in the regs that would say the BIA cannot do that? There is a regulation on point, and I've outlined the BIA's three choices at page 21 and 22 of our brief. The Board has roughly three choices. Two of them are by regulation, and one of them is by a precedent decision called matter of bravado. The Board can issue its own decision, just writing its own new reasons for the agency's decision, and in that case, the Board's decision is before the court. It can also adopt and affirm the judge's decision under that decision in matter of bravado, but normally the courts have said it has to say that it's doing that for the courts to treat it as adopting and affirming the judge's decision. That's how the court handled the issue in the Aziz versus Gonzalez case. There's a lot more case law in other circuits because it's just not well developed in this circuit, but if the Board intends to adopt and affirm, normally it has to say so through that matter of bravado decision, and then the third thing the Board can do is adopt and affirm. That's under the next regulatory section. Here the Board cited 8 CFR 1003.1E5. If it cites E6, that's the language that says the Board can adopt without an opinion the immigration judge's decision, and then the court reviews the immigration judge's decision as if it's the only decision by the agency. Here the Board didn't do any of those three things, but it did list a bunch of new reasons for the agency's decision, and petitioner would ask the court to review those cases and the regulations and say, if what the Board is planning to do here is issue its own decision and not, quote, expressly adopt the immigration judge's decision, then it missed a lot of the issues. It missed, I think, perhaps most importantly, the past persecution issue because those law versus holder factors, the factors that determine whether certain threats are serious enough as a matter of law to amount to persecution, the Board didn't address at all. And if the Board intended to adopt the immigration judge's decision, at a minimum, it seems like the Board would need to say the word adopt or cite matter of bravado or cite the regulation about adopting IJ decisions, which is the next section, the one that it didn't cite. Council, if we were to say that, just for purposes of this question, that the BIA did adopt the IJ's opinion, what is left then in your, just briefly, what issues still remain then for the court? There are several. So I'll start with past persecution. On the issue of past persecution, we think the Board's decision uses the wrong standard because it talks about reviewing this past persecution decision for clear error, but then it cites a series of cases that talk about what amounts of harm are enough to be persecution as a matter of law. In the Garcia-Mata case, the court looked to something similar that the Board had done, where the Board said it was talking about facts, and then it cited a string of cases that talked about law. The court said that was unsettling, that if the Board really means to be dealing with facts and using the clear error standard, it doesn't make any sense why they would then cite a string of cases about what harms rise to the level of persecution. And that's essentially what the Board has done here. We think the Board has used the wrong standard. When the Board is reviewing legal issues, whether the harm rises to the level of persecution, it does so de novo. But the Board here didn't say it was reviewing that issue de novo. It opened the paragraph by saying, we discern no clear error in the immigration judge's findings of fact. So that's one issue that survives, I think, even if the court were to hold that the Board had adopted the IJ's decision. The second is that just on the facts, even if the Board had intended to adopt the IJ's findings about whether Teresa's harms rise to the level of persecution, the record supports the conclusion that they do. There is extensive evidence in the record of what I think was missing in Law v. Holder and the other cases this court has heard about threats. What was missing is also in the series of cases the Board cited at pages three and four. In each of those, there was no medical record at all about how the threats had affected the person. That's what the court said was missing to determine that those threats rose to the level of persecution. But there is extensive medical records here. At 247 to 248 of the administrative record, Teresa is found to be suffering depression, anxiety, trauma, disrupting her overall functioning, insomnia, fatigue. And what's missing from the agency's decision is why. Why doesn't that meet the standard of persecution that this court has really clearly laid out in Law v. Holder? In Law, it wasn't persecution because the person testified she didn't take the threat all that seriously. It didn't affect her. She thought it was a hoax. But the remaining question is, why isn't this case the exception, the exception that the court identified in Law? So even on the facts, even if the court had intended to adopt the IJ's findings, no reasonable fact finder could have made that conclusion under this record. The two remaining issues that survive, I think, are on the issue of future persecution. Oh, I see that my time has run out. May I finish answering the question? Yes, go ahead and finish. So the two remaining issues on future persecution are the BIA engaged in new fact finding in its decision. First, it said that Teresa's sister was, quote, apparently unharmed in her country, although the judge had made no such fact finding. This court has said the board can't do its own fact finding. And then second, it said the board said it agreed with the judge's finding that relocation would be reasonable when even the attorney general admits at page 32 of its brief that the immigration judge didn't use the word reasonable. Again, that's the BIA engaging in its own fact finding. Thank you. Thank you, Mr. Hoppe. Ms. Stoddard, we're prepared to hear from you.  The court should deny the petition for review because the board properly reviewed the immigration judge's determinations, and there's no record evidence compelling reversal of the agency's past persecution determination or as objectively reasonable fear of future persecution determination. I'd first like to walk through the board's decision with the court since that seems to be the focus of the argument today. And this is a very typical board decision in which the board starts by going through its standard of review. It says we review the findings of fact, including credibility determinations under the clear error standard. All other determinations are reviewed de novo. It then makes those determinations. The first sentence of the next paragraph is we just are no clear, no clear error in the immigration judge's findings of fact. It then starts another sentence. The record supports the immigration judge's determination. And it goes through and makes and evaluates the standard of review, or excuse me, evaluates the standard for what needs to be established and then cites record evidence as well as case law to determine that the standard was not met. That is a clear application of a de novo application of a de novo consideration of a legal issue in that case. What about footnote two where in the board in sort of punting on the membership in a cognizable particular social group says in light of the lack of clear error in the IJ's determination on the on account of element. That's not a that's not a factual determination, is it? It's reviewed for clear error. The nexus motive determination is factual. So, it depends on it depends on which part of the analysis, but the motive determination is a factual determination that would be reviewed for clear error. What is the persecutors motive in engaging in persecuted conduct? So, the on account of is not a legal conclusion on whether there is the that connection. Well, not really. No, it's a factual. It's involves the application of facts. So, certain facts finding would need to happen. What is the motive of the persecutors actions? That's a factual determination of the board would review for clear error. But the, the corollary argument is whether or not that protected ground is a cognizable protected and that would be the legal determination that I think perhaps you're thinking of does something constitute a social group. And that would be the application of a lot of facts that would be more of that mixed question. But the motive determination itself would be a factual determination as to what that person's motive actually is. But the board, I don't I don't think anybody's arguing here that the, or certainly we're not arguing here that the board adopted the immigration determination. It evaluated and reviewed the factual findings for error, and then made a de novo determination on the law in doing. So, it affirmed, which is different than adopt matter of bravado is the board's precedent on the issue and in matter of talks about the difference between a pure adoption and affirming the reasoning behind immigration judges determination. And this has been an area of litigation as to what exactly is brought through and the result is generally that if the board affirms the immigration judges determination, we can look to the immigration judges decision to see what lies behind that conclusion. And we can look to see what the board is actually affirming. If the board adopts the immigration judges determination, the language from bravado talks about the immigration judges determination becoming as if it was the board's determination. So, instead of just looking to see what is behind the decision and looking to see what reasoning is there, it becomes part of the decision itself. If that distinction makes a difference. We made that distinction in our case law. We may have. I just don't I don't recall it. You know, I don't I'm happy to look closely and provide a citation for you. I don't have one in front of me, unfortunately, but I can talk a little bit about some of the other cases that have that have reached that distinction. And if you look at we always come back to bravado itself and I will file a letter with some cases for you, your honor. But when you look to bravado itself in the cases that say that the language is we adopt and affirm and then cite matter bravado for that adoption component. If it just says we affirm the immigration judges decision cases across the country routinely find that you could look behind the board's decision to see what the immigration judges analysis was. And that's how we can consider the factual finding. That's how it would be defensible to say that there's no clear error in the immigration judges factual finding the board wasn't required to go through each individual factual determination, write them out and discuss whether or not there was clear error. It was the fact that the board made that determination. We find no clear error is sufficient and you can look to the immigration judges determination and decision to see what was behind there. Why are we somewhere in between here? Because the, uh. Uh, said that they did so for the reasons articulated by the. Yes, it's definitely not an adoption. It's much more than if we affirm the immigration judges. Reasoning and for these reasons that we have added, particularly the recognition that the standard of past persecution wasn't met and citing all of those cases. So, for those reasons, those would be reasons that the board provided as part of its decision. I would like to address the Garcia matter issue or case really quickly and just distinguish that case that it is not exactly like this case. In that case, the board rejected some of the factual findings that the immigration judges made. That did not happen here. The board did not reject any of the findings that the immigration judge made the board just declined to address the nexus determination and that footnote too, but did not reject any of the factual findings. We see that rejection sometimes in footnotes saying we distance ourselves. The, uh, the board will say things like, um. We do not affirm the immigration judges determination on nexus, or we do not affirm the entirety of the adverse credibility determination. And that's where the board would distance itself from those determinations and not affirm those specific ones. But here, all of the factual findings were upheld by the board. So it is very different than Garcia in which case, the board rejected some findings and then reached a conclusion. And it was unclear under which standard of review is doing that because it had rejected some of those factual determinations. If the court has no other questions on the scope of review, I'm happy to briefly discuss the merits of the case. Specifically, there is no past persecution here. The agency did consider all of the facts in the aggregate. I would refer the court to its Mahia Ramos case, which is very, very similar to this one. In that case, there was a businessman father who was kidnapped and he was at his brother was also the petitioner's brother was also kidnapped. The petitioner was threatened by phone. And she and her mother were cut off by a vehicle in a quote, great time of unease for her. And she suffered no other personal harm. And this court found that that did not rise to the level of past persecution while it was unease while she felt great unease when she was cut off in the car. And her father had been kidnapped and presumably killed because of his wealth. That did not constitute past persecution to her. So the site in that case is nine thirty four F third at seven ninety three. And I think that case is very instructive to this one. I would also refer the court to its Kano case and show either case. The show either case from 2004 talks about PTSD symptoms from things that happened as being insufficient to constitute past persecution, which is just what we have here. Miss Padilla understandably was very upset about what happened, but the traumatic experience and her emotional toll does not rise to the level of persecution. In general, this court requires threats to have immediacy and specificity. They must be more than just directed menacing. And I think that we just don't reach that standard in this case. And finally, just with regards to the objectively reasonable fear of future persecution, I would refer to the court on page 90 of the record. It's the immigration judge's decision where the immigration judge evaluated the relocation and did find that it was reasonable for her to relocate elsewhere. The immigration judge went through the applicable standard and the analysis that was required and reached a conclusion. And there is just no record evidence in this record that would compel reversal of that determination. Thank you. Thank you, Miss Duggar. Mr. Hopic, I don't think you have any rebuttal, but would you like a minute to respond? And you're still muted, so we'll give you your minute. We'll start when you unmute. My apologies. Technology gets the best of me. I just have one thing. If the court is looking for one clear signal of what standard of review the board was using, consider this. The facts were not in dispute. The immigration judge found her credible and credited her medical evidence. That's at pages 88 and 89 of the addendum. And his conclusion was merely that the harm, quote, did not rise to the level of persecution. That's a question of law. And to the extent that the board says it was using clear error to review it, it can't be any other way because she wasn't disputing any findings of fact. She wasn't disputing what she had gone through or whether there was trauma. The only thing that was in dispute really was whether those harms that the IJ had credited rose to the level of persecution. The board can't review that for clear error. In doing so, it handcuffed itself. It could have reversed de novo if it had the ability to use that standard. And we think it used the wrong standard. Thank you to both counsel. We'll take the matter under advisement.